[No. F034287. Fifth Dist. May 1, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
SCARLETT O'CASEY, Defendant and Appellant.

968

**COUNSEL**

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stephen G. Herndon and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THAXTER, Acting P. J.**—Appellant Scarlett O'Casey was charged by amended information filed April 6, 1999, with four felony counts: making a knowingly false material statement for the purpose of obtaining workers' compensation benefits as defined in Labor Code section 3207 (Ins. Code, § 1871.4, subd. (a)(1)) (count 1); presenting a knowingly false written or oral material statement in support of a workers' compensation insurance benefit claim (Ins. Code, § 1871.4, subd. (a)(2)) (count 2); grand theft from Fireman's Fund Insurance Company (Pen. Code, § 487, subd. (a))[1] (count 3); and perjury (§ 118, subd. (a)) (count 4). Counts 1-3 were alleged to have occurred "on or about and between May 5, 1996, and January 30, 1997," and count 4 was alleged to have occurred "on or about October 28, 1996." It was further alleged as to each count that appellant had served a prior prison term (§ 667.5, subd. (b)).

On June 7, 1999, the date set for jury trial, appellant entered a negotiated "no contest" plea to the count 1 charge of insurance fraud (Ins. Code,

---

[1]Except as otherwise indicated, all subsequent statutory references are to the Penal Code.

§ 1871.4, subd. (a)(1)) and admitted the prior prison term enhancement (§ 667.5, subd. (b)), in exchange for dismissal of the remaining charges and a grant of felony probation on conditions including no more than a year in county jail and direct restitution in an amount determined by the probation officer or pursuant to a contested hearing.

Following an evidentiary hearing, on August 25, 1999, the court denied appellant's motion to withdraw her plea, suspended imposition of sentence, and placed appellant on probation for five years on conditions including a nine-month jail term and payment of direct restitution to Fireman's Fund Insurance Company in an amount to be determined at a further hearing.

The court received briefing and held further hearings on the restitution issue on October 7 and November 9, 1999. On November 9, 1999, the court ruled that Fireman's Fund Insurance Company was a direct victim of the appellant's insurance fraud and ordered payment of restitution in a stipulated amount of $10,000 to the insurance company.

Appellant filed a notice of appeal from the "judgment of conviction" on October 23, 1999. At appellate counsel's request, on January 11, 2000, this court construed the notice to include an appeal from the November 9, 1999, restitution order. The court also deemed the notice to state the appeal is " 'based solely upon grounds . . . occurring after entry of the plea which do not challenge its validity . . . .' " (Cal. Rules of Court, rule 31(d).)[2]

## FACTS

On May 6, 1996, appellant reported to her supervisor at a Baskin-Robbins store in Bakersfield, California, that when leaving work about 10:00 p.m. the previous evening, she had slipped on ice cream and fallen, injuring her back. Appellant submitted a claim for workers' compensation benefits, and the owner of the business forwarded the claim forms to Fireman's Fund Insurance Company, his workers' compensation carrier. In the course of an investigation of the claim, appellant made further representations concerning the injury.

Appellant received medical treatment and a workers' compensation disability settlement; however, the ongoing investigation led to evidence the claim was fraudulent, and in 1998, criminal charges were filed. Following appellant's conviction by negotiated "no contest plea" of one count of

---

[2]Although the court also granted appellant's subsequent motion for leave to seek a belated certificate of probable cause (§ 1237.5), the record contains no indication that such a certificate was issued by the trial court.

insurance fraud, Fireman's Fund Insurance Company submitted a claim for $32,000 in restitution. Approximately $5,000 of that amount represented disability payments, medical expenses and the cost of a medical evaluation; the remainder consisted of attorney's fees, investigative and litigation costs. Over appellant's objection, the court determined Fireman's Fund Insurance Company was entitled to restitution as a direct victim of the fraud. Pursuant to the court's indication it would disallow costs relating to prosecution of appellant, the parties entered into a stipulation that the amount of direct restitution owed to Fireman's Fund Insurance Company was $10,000.

## DISCUSSION

In *People v. Birkett* (1999) 21 Cal.4th 226 [87 Cal.Rptr.2d 205, 980 P.2d 912], the defendant pled guilty to automobile theft and owning and operating a "chop shop" to dismantle and sell the parts, and agreed to pay restitution to several victims whose vehicles had been stolen. (*Id.* at pp. 229-230.) At a hearing on restitution, the trial court found two of the victims had been partially reimbursed under their automobile insurance policies, and ordered restitution to the insurance companies for those amounts. The Supreme Court reviewed the applicable statutory scheme and held that restitution was authorized (even as a condition of probation) only to direct crime victims, and insurance companies do not qualify as such merely by reimbursing crime losses under the terms of policies of insurance. (*Id.* at pp. 243-247.)

In the trial court, appellant opposed payment of requested restitution to Fireman's Fund Insurance Company on the ground that a workers' compensation carrier is not a direct victim of the offense within the meaning of section 1202.4, citing *People v. Birkett, supra,* 21 Cal.4th 226. Accordingly, appellant sought to limit restitution to the deductible, if any, paid by appellant's employer on the claim. The court disagreed, distinguishing the usual liability insurance situation discussed in *Birkett*, because the workers' compensation insurer suffered loss for payments it made to and on behalf of appellant directly as a result of the fraud or misrepresentation, rather than reimbursing the employer for crime losses and at most being subrogated to the employer's rights.

On appeal, appellant renews the same argument, contending the court erred in finding Fireman's Fund Insurance Company was a direct victim of the crime so as to be entitled to direct restitution within section 1202.4, subdivision (k)(2). Section 1202.4, subdivision (f) requires payment of direct restitution "[i]n every case in which a victim has suffered economic loss as a result of the defendant's conduct," and other provisions clearly mandate victim restitution in cases in which probation is granted (§§ 1202.4,

subd. (m), 1203.1, subd. (a)(3); former § 1203.04; see *People v. Birkett, supra,* 21 Cal.4th at pp. 247-248, fn. 21.)[3] Subdivision (k)(2) of section 1202.4 (as applicable in this case) defines "victim" to include "[a]ny corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime." We agree with the trial court that this case is distinguishable from the situation addressed in *Birkett,* and uphold the order for restitution.

As explained in *Birkett* and other cases (*People v. Birkett, supra,* 21 Cal.4th at p. 232), the victim is the object of the crime. In contrast to *Birkett,* in which the direct victims of the crimes were the automobile owners whose vehicles had been stolen to dismantle and sell the parts, and the only involvement of the insurers was to indemnify the owners for covered property losses under their insurance policies, in this case, the trial court reasonably viewed the insurance company as a direct crime victim, where, based upon appellant's fraud, it was induced to make payments directly to appellant and to medical providers on appellant's behalf. Thus, in this instance, the insurance company itself is the object of the crime. (See *People v. Moloy* (2000) 84 Cal.App.4th 257 [100 Cal.Rptr.2d 676] [direct restitution to insurance companies properly ordered upon conviction of conspiracy to present false and fraudulent insurance claims where defendant and his coparticipants pursued a scheme of collecting insurance recoveries by inducing traffic accidents and filing false claims].)

Appellant emphasizes that she received compensation pursuant to her employer's policy of workers' compensation coverage, and argues that the employer is therefore the direct victim of the fraud, the workers' compensation insurance company's relation to the crime being essentially that of any other liability insurer. We disagree and find persuasive the discussion in *People v. Moloy, supra,* 84 Cal.App.4th at page 261: "The fact the insurance companies were obligated to make the payments to Moloy by reason of their contracts with the insureds does not foreclose the conclusion the insurance companies were the direct victims of Moloy's fraud. Indeed, the insured motorists suffered no financial loss arising out of Moloy's submission of false insurance claims and there is no evidence that Moloy or his accomplices attempted to obtain any property fraudulently from the motorists with whom they induced automobile collisions, or that funds were received from anyone other than an insurance company. The loss that flowed from the conduct for which Moloy was convicted was borne entirely, and directly, by the insurance companies. Thus, the insurance companies were the direct victims of the loss and restitution properly was ordered in their favor. [Citations.]"

---

[3]The parties agree this case is governed by the law as discussed in *Birkett.*

That conclusion is further supported by consideration of the crime of which appellant stands convicted. Appellant did not plead to fraudulently seeking to obtain property of the employer. She entered a negotiated plea of "no contest" to workers' compensation insurance fraud, specifically admitting she "[m]a[d]e or cause[d] to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying any compensation, as defined in Section 3207 of the Labor Code." (Ins. Code, § 1871.4, subd. (a)(1).) Under Labor Code section 3207, compensation means "compensation under Division 4 and includes every benefit or payment conferred by Division 4 upon an injured employee, including vocational rehabilitation . . . without regard to negligence." Thus, the definition of the offense of workers' compensation insurance fraud refers to items of monetary value that by their nature are obtained either from the insurance carrier or self-insured employer.

Furthermore, Insurance Code section 1871.4, subdivision (b) expressly provides that upon conviction of an offense defined in subdivision (a), "[r]estitution shall be ordered, including restitution for any medical evaluation or treatment services obtained or provided. The court shall determine the amount of restitution and the person or persons to whom the restitution shall be paid." Insurance Code section 1871, subdivision (d), containing legislative findings and declarations pertaining to the Insurance Fraud Prevention Act of which section 1871.4 is a part, identifies indirect harm from workers' compensation fraud, which damages employers by "contributing to the increasingly high cost of workers' compensation insurance and self-insurance," and employees by "undermining the perceived legitimacy of all workers' compensation claims." In contrast, the direct harm is suffered by either the workers, compensation insurance carrier or the self-insured employer, which incurs the cost of benefits and related costs for the fraudulent claim.

Contrary to appellant's assertion, the discussion in *People v. Leach* (1975) 15 Cal.3d 419, 435 [124 Cal.Rptr. 752, 541 P.2d 296], has nothing to do with the restitution issue in this case. The question in *Leach* was whether, in a prosecution for murder for hire, there was sufficient proof of a further conspiracy to collect life insurance to make admissible postmurder extrajudicial declarations under the coconspirator exception to the hearsay rule (Evid. Code, § 1223). The court specifically noted that the defendants were not charged with any crime involving an intent to commit fraud, and under the circumstances declined to extend the hearsay exception where "the existence of a conspiracy is urged not for the purpose of imposing substantive liability but merely as a vehicle for using otherwise inadmissible hearsay evidence against a defendant." (*People v. Leach, supra,* 15 Cal.3d at p. 435.)

Here, on the evidence before it, the trial court properly determined that Fireman's Fund Insurance Company was a direct victim of appellant's crime of workers' compensation insurance fraud. (§ 1202.4, subd. (k).) Having so found, the order that appellant pay victim restitution as a condition of probation for losses occasioned by her fraudulent claim was consonant with both the rehabilitative goals of probation and the constitutional provision mandating victim restitution.[4]

## DISPOSITION

The judgment is affirmed.

Harris, J., and Wiseman, J., concurred.

[4]The amount of the restitution order, which was the subject of a stipulation below, is not an issue on this appeal.